ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeal of -- | ) | |
| | ) | |
| Suh'dutsing Technologies, LLC | ) | ASBCA No. 58760 |
| | ) | |
| Under Contract No. HC1028-10-D-2003 | ) | |

APPEARANCES FOR THE APPELLANT: Thomas O. Mason, Esq.
        Francis E. Purcell, Jr., Esq.
        Christopher J. Kimball, Esq.
          Cooley LLP
          Washington, DC

APPEARANCES FOR THE GOVERNMENT: Robert Gorman, Esq.
          DISA General Counsel
        Stephanie A. Kreis, Esq.
        Mark B. Grebel, Esq.
          Trial Attorneys
          Defense Information Systems Agency
          Scott Air Force Base, IL

## OPINION BY ADMINISTRATIVE JUDGE DELMAN
## ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

The Defense Information Systems Agency (DISA or government) moves to dismiss the appeal of Suh'dutsing Technologies, LLC (appellant) for lack of jurisdiction as premature under the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. Appellant opposes the motion. For reasons stated below, we deny the government's motion.

### STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 26 March 2010, DISA, through the Defense Information Technology Contracting Organization, awarded Contract No. HC1028-10-D-2003 (the contract) to appellant for the upgrade of the DISA Computing Services (CS) system from the IBM Tivoli Enterprise Console to the IBM Netcool system and migration to the IBM Tivoli Business Services Manager (R4, tab 1).

2. The contract was structured as an indefinite-delivery/indefinite-quantity commercial services contract using firm-fixed price orders. According to Section B-2 "MINIMUM AND MAXIMUM AMOUNT":

> The minimum contract amount for a single award will be $2.3 Million for the entire 3 year base period and two one year options. The maximum contract ceiling amount is $25.2 Million over the 3 year base period and two one-year options. There shall be no minimum guarantee for any option years.

(R4, tab 1 at 2) The contract envisioned implementation and sustainment services (*id.* at 13-15).

3. The contract incorporated by reference the standard FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (MAR 2009) clause (R4, tab 1 at 41). Paragraph (d) of this clause, effective at the time of contract, incorporated by reference the standard FAR 52.233-1, DISPUTES (JUL 2002) clause.

4. Appellant subcontracted with ESCgov, Inc. (ESC) (R4, tab 5D at 1, tab 39 at 4). ESC, in turn, subcontracted with SMS Data Products Group, Inc. (SMS) (R4, tab 5D at 1, tab 39 at 44).

5. DISA issued two fixed-price task orders to appellant for the implementation phase of the CS system upgrade. The first task order, issued the same day the contract was awarded, was valued at $2.63 million with a performance period ending on 24 September 2010 (R4, tab 2 at 1-2). The record does not indicate that the first task order's period of performance was extended beyond 24 September 2010; nonetheless, the parties agreed on 24 February 2011 to modify the first task order by reducing its entire remaining value of $1.9 million (R4, tab 2B). On the same day, 24 February 2011, DISA issued the second task order for $1.9 million with a performance period ending on 25 April 2011 (R4, tab 3 at 1-2). On 24 May 2011, the period of performance for the second task order was extended through 10 June 2011 (R4, tab 3C).

6. By letter dated 27 June 2011, DISA informed appellant that it was reevaluating its "acquisition strategy based on several turn[s] of events[,] to include funding constraints," and that it had "elected not to proceed to the Sustainment Phase for the Utility Services" (R4, tab 4).

7. By letter dated 21 December 2012, appellant submitted a claim for $4,254,430.61 to the contracting officer (CO) (R4, tabs 38A, 39 at 4). Appellant's claim consisted entirely of a pass-through claim of its subcontractor ESC, which incorporated the claim of the second-tier subcontractor, SMS (R4, tab 38A). Appellant's claim was

2

submitted in the form of a single-page cover letter, with attached certification,[1] enclosed within a box containing the claim and its supporting documentation (R4, tab 38C).

8. The government received the box containing appellant's claim on 9 January 2013. However, the CO did not see appellant's one-page claim letter when she opened the box. (R4, tab 38D) Believing that appellant had submitted only the pass-through subcontractor claim without asserting a claim of its own, the CO issued a letter dated 29 January 2013 informing appellant that she had no authority to entertain claims from parties with whom the government had no privity of contract. Therefore, she could not issue a final decision. (R4, tab 38B)

9. Appellant responded, by email on 13 February 2013, that appellant's certified claim had been included with its submission. Appellant attached an electronic copy of its single-page, certified claim. Appellant also requested that the CO "rescind" her 29 January 2013 letter and consider the merits of appellant's claim. (R4, tab 38C)

10. Upon receiving appellant's 13 February 2013 email, the CO examined the box in which appellant's claim had been submitted and discovered appellant's single-page claim "wedged against the side of the box." By letter dated 28 February 2013, the CO acknowledged that she had, in fact, received appellant's certified claim on 9 January 2013. (R4, tab 38D)

11. The CO also noted in her 28 February 2013 letter that she had not yet reviewed the claim in any detail, and stated that it would be "at least another sixty days from the date of receipt of the claims [sic] (January 9, 2013) before I will be able to issue a decision" (R4, tab 38D). The 60th calendar day following the CO's receipt of the certified claim was Sunday, 10 March 2013. The next business day was Monday, 11 March 2013.

12. By letter dated 6 March 2013, the CO informed appellant that "given the volume of documentation, you will not receive a contracting officer's decision by March 9, 2013. It will be at least another sixty days from March 9, 2013 before I am able to issue a decision." (R4, tab 38E)

13. On 15 March 2013, appellant responded to the CO's letter: "Given [the CO's] most recent statement that [she did] not anticipate issuing a final decision on the certified claim[] until approximately May 9, 2013," appellant again requested that she formally rescind her 29 January 2013 letter, and that she clarify that the letter did not constitute her final decision on the merits of the claim (R4, tab 38F).

---

[1] By Order dated 31 March 2014, the Board determined that appellant's claim certification was defective, and ordered correction in accordance with 41 U.S.C. § 7103(b)(3).

3

14. The CO responded to appellant's request on 17 April 2013 by formally rescinding her 29 January 2013 letter. Additionally, she stated that "[a]s set forth in my February 28, 2013 letter[,] a contracting officer's decision will not be rendered until May 9, 2013. If it is necessary to extend the review time, you will be informed." In this letter, the CO provided no explanation why her decision would "not be rendered until May 9, 2013." (R4, tab 38G)

15. By letter dated 8 May 2013, the CO again informed appellant that she required additional time to respond to the claim, stating that "[a] contracting officer's decision will not be rendered until July 9, 2013" (R4, tab 38H). Again, the CO provided no explanation for extending the decision date.

16. Appellant responded on 17 May 2013, stating that despite the repeated extensions, the government had not requested any additional information or attempted to discuss the claim, and appellant asked whether the government intended the additional time to facilitate resolution of the claim by mutual agreement. Appellant stated that, if not, it "reserve[d] the right to treat the failure to issue a decision within the specified time period as a deemed denial of the claim and seek appropriate review." (R4, tab 38I)

17. By letter dated 28 June 2013, appellant appealed to the Board from the deemed denial of its claim.

## DECISION

The government moves to dismiss this appeal for lack of jurisdiction on the ground that the appeal is premature, asserting that the CO, by letter to appellant dated 8 May 2013, fixed a reasonable date by which she would issue her decision – 9 July 2013 – and appellant filed this appeal prior to that date.

Under the CDA, a CO's decision on a claim or a CO's failure to timely issue a decision on a claim is a prerequisite to the Board's jurisdiction. *Metag Insaat Ticaret A.S.*, ASBCA No. 58616, 13 BCA ¶ 35,454 at 173,862. Within 60 days of receiving a certified claim for an amount in excess of $100,000, the CO must either issue a decision, or else "notify the contractor of the time within which a decision will be issued." 41 U.S.C. § 7103(f)(2)(B); *Public Warehousing Co., K.S.C.*, ASBCA No. 56888, 09-2 BCA ¶ 34,265 at 169,306 (CO must provide a fixed date or date certain); *Cubic Defense Applications, Inc.*, ASBCA No. 56097, 07-2 BCA ¶ 33,695 at 166,790 (CO's use of "approximately" did not provide a fixed or specific date). Regardless of the value of the claim, the CO must issue a decision within a reasonable amount of time from receipt of the claim, "taking into account such factors as the size and complexity of the claim and the adequacy of information in support of the claim provided by the contractor." 41 U.S.C. § 7103(f)(3).

4

A CO's failure to issue a decision within the required time period is deemed a decision of the CO denying the claim, from which the contractor may appeal. 41 U.S.C. § 7103(f)(5).

Here, the government received appellant's certified claim on 9 January 2013 (SOF ¶ 8). In accordance with 41 U.S.C. § 7103(f)(2), the government was required to issue a decision or fix a reasonable date for doing so within 60 days of receipt of the claim, or by 11 March 2013. On 6 March 2013, the CO informed appellant that it would be "at least another sixty days from March 9, 2013 before I am able to issue a decision" (SOF ¶ 12). We believe that the statement "at least another sixty days…before I am able to issue a decision" is insufficiently definite to comply with section 7103(f)(2)(B).

Given the government's failure to comply with this CDA provision, appellant was authorized to file an appeal to this Board after 11 March 2013, based upon the deemed denial of its claim. 41 U.S.C. § 7103(f)(5). Since appellant's right of appeal had already attached, the CO's subsequent letters extending the date for the issuance of a decision are immaterial to appellant's right to appeal from a deemed denial of its claim. We conclude that appellant's notice of appeal of 28 June 2013 was not premature, and we retain jurisdiction over the appeal.

## CONCLUSION

For reasons stated, we deny the government's motion to dismiss this appeal for lack of jurisdiction on the ground that the appeal is premature.

Dated: 28 April 2014

JACK DELMAN
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

5

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58760, Appeal of Suh'dutsing Technologies, LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals